IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

COUNTY OF MAUI, DARRELL RAMOS )    CIVIL 14-00236 LEK-RLP
AND ASBEL POLANCO,            )
                             )
        Plaintiffs,           )
                             )
    vs.                       )
                             )
ACE AMERICAN INSURANCE        )
COMPANY, MAUI FAIR ALLIANCE,  )
JOHN DOES 1-10, JOHN DOE      )
PARTNERSHIPS 1-10 and JOHN    )
DOE CORPORATIONS 1-10,        )
                             )
        Defendants.           )
_____ )


**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART AND
DENYING IN PART DEFENDANT ACE AMERICAN INSURANCE COMPANY'S
COUNTER-MOTION FOR SUMMARY JUDGMENT**

Before the Court are: Plaintiffs County of Maui ("the County"), Darrell Ramos ("Ramos"), and Asbel Polanco's ("Polanco," and all collectively, "Plaintiffs") Motion for Summary Judgment ("Motion"), filed on January 2, 2015; and Defendant Ace American Insurance Company's ("Ace Insurance") Counter-Motion for Summary Judgment ("Counter-Motion"), filed jointly with its memorandum in opposition to the Motion, on January 22, 2015. [Dkt. nos. 31, 36.] Plaintiffs filed their joint reply and memorandum in opposition to the Counter-Motion on February 13, 2015. [Dkt. no. 40.] Ace Insurance filed its reply in support of the Counter-Motion on February 23, 2015. [Dkt. no. 43.] On February 10, 2015, Defendant Maui Fair Alliance ("Fair

Alliance") filed a statement of no position as to both motions. [Dkt. no. 39.] These matters came on for hearing on March 2, 2015. After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, Plaintiffs' Motion and Ace Insurance's Counter-Motion are HEREBY GRANTED IN PART AND DENIED IN PART. The Court GRANTS summary judgment in favor of Ace Insurance as to the duty to defend and the duty to indemnify under Coverage A, and the Court GRANTS summary judgment in favor of Plaintiffs as to Ace Insurance's duty to defend under Coverage B. Further, the Court FINDS that there are genuine issues of material fact which preclude summary judgment as to the duty to indemnify under Coverage B.

## BACKGROUND

On April 14, 2014, the County filed its original Complaint for Declaratory Judgment ("Complaint") against Ace Insurance and the Fair Alliance in the State of Hawai`i Circuit Court of the Second Circuit. Ace Insurance removed the action on May 19, 2014, based on diversity jurisdiction because the County is a Hawai`i municipal corporation and Ace Insurance is a Pennsylvania corporation with its principal place of business in Pennsylvania. [Notice of Removal, filed 5/19/14 (dkt. no. 1) at pgs. 1-3.] Ace Insurance acknowledged that the Complaint alleges that the Fair Alliance is a Hawai`i non-profit corporation, and therefore, on its face, the Complaint did not satisfy the

complete diversity requirement, but it argued that the Fair Alliance was fraudulently joined, and the Fair Alliance's citizenship should be disregarded in determining subject matter jurisdiction. [Id. at ¶¶ 6-10.] Plaintiffs did not contest the removal, and the Fair Alliance did not pursue the allegation it was fraudulently joined. Ace Insurance filed its Answer to the Complaint on May 20, 2014. [Dkt. no. 6.]

Plaintiffs filed their First Amended Complaint for Declaratory Judgment ("First Amended Complaint") on June 4, 2014. [Dkt. no. 10.] The First Amended Complaint alleges that the County and the Fair Alliance were insureds under policy number G24950840 issued by Ace Insurance ("the Policy"). [First Amended Complaint at ¶¶ 6, 8.] Plaintiffs allege that, pursuant to the Policy, Ace Insurance owes them a duty to defend and a duty to indemnify them in a civil action pending in this district court, Goodhue v. County of Maui, et al., CV 14-00006 ACK-KSC ("Goodhue" or "the Underlying Action"). [Id. at ¶¶ 11, 16.] The Underlying Action arises from an incident that occurred at the Maui County Fair ("the County Fair") on October 4, 2013. Stratford Goodhue and Doreen Goodhue ("the Goodhues") were distributing religious pamphlets in the area in front of the entrance to the County Fair.[1] According to the First Amended Compliant, the Goodhues

_____

[1] Stratford Goodhue "is an ordained Christian Pastor." [Goodhue, First Amended Complaint for Declaratory and Injunctive (continued...)

3

were evicted from the area at the direction of the Fair

Alliance's president, Avery Chumbley ("the Incident").  The

Goodhues allege that the eviction violated their constitutional

rights.  [Id. at ¶¶ 10, 13.]  Plaintiffs allege that Ace

Insurance breached the insurance contract by refusing to provide

Plaintiffs with a defense and indemnification in the Underlying

Action.[2]  [Id. at ¶¶ 17, 19.]

The Goodhue Complaint also alleges claims against:

Ramos, a sergeant in the Maui Police Department ("MPD"), in his

individual capacity; and Polanco, an MPD officer, in his

individual capacity.  The Goodhues allege that Ramos and Polanco

participated in the violation of their First Amendment rights.

[Goodhue Complaint at ¶ 14.]  In the First Amended Complaint in

the instant case, Plaintiffs allege that, on the day of the

Incident, Ramos and Polanco were acting as employees of the Fair

Alliance.  Ramos and Polanco reported directly to the Fair

---

[1](...continued)
Relief and Damages ("Goodhue Complaint"), filed 5/12/14 (dkt. no.
32), at ¶ 2.]  The Goodhue Complaint refers to him as "Pastor
Goodhue."
    Plaintiffs attached a copy of the Goodhue Complaint to their
Concise Statement of Facts in Support of Their Motion for Summary
Judgment ("Plaintiffs' CSOF"), [filed 1/2/15 (dkt. no. 32),] as
Exhibit 1 to the Declaration of Moana M. Lutey ("Lutey
Declaration").

    [2] Plaintiffs note that the County filed an action against
the Fair Alliance and Avery Chumbley on March 5, 2014.  [First
Amended Complaint at ¶ 12.]

Alliance, which provided them with their instructions. [First
Amended Complaint at ¶ 15.]

Plaintiffs allege that there is an actual controversy
regarding whether Ace Insurance has an obligation to provide them
with a defense and indemnification from any damages award against
them in Goodhue. [Id. at ¶ 18.] Plaintiffs pray for the
following relief: "a declaratory judgment be entered finding and
ordering that Defendant Ace defend and indemnify Plaintiffs and
provide liability coverage to Plaintiffs;" attorneys' fees and
costs pursuant to Haw. Rev. Stat. § 431:10C-242; compensatory,
consequential, and special damages from Ace Insurance; and any
other appropriate relief. [Id. at pgs. 4-5.]

In the Motion, Plaintiffs argue that they are entitled
to a defense and to indemnification in Goodhue pursuant to
Coverage A – the Policy's coverage of "bodily injury" – as well
as pursuant to Coverage B – the coverage of "personal and
advertising injury."

In the Counter-Motion, Ace Insurance argues that:
although the County is an additional insured under the Policy,
Ramos and Polanco are not; the Goodhue Complaint does not allege
claims for bodily injury or the loss of use of tangible property;
the Incident is not an "occurrence" under the Policy; even if it
is and coverage would otherwise be available based on "bodily
injury," the exclusion for "expected or intended injury"

precludes coverage; coverage is not available because <u>Goodhue</u> does not present a "personal and advertising injury" under the Policy; and, even if it does, the exclusion for "knowing violation of rights of another" precludes coverage.

**DISCUSSION**

I.  **Applicable Legal Principles**

Because Ace Insurance removed this action based on diversity jurisdiction, Hawai`i substantive law applies to the issues in this case. <u>See, e.g.</u>, <u>State Farm Fire & Cas. Co. v. Cabalis</u>, Civ. No. 13-00489 ACK-RLP, 2015 WL 159157, at *3 (D. Hawai`i Jan. 13, 2015); <u>U.S. Fire Ins. Co. v. Cyanotech Corp.</u>, Civ. No. 12-00537 JMS-BMK, 2013 WL 5755338, at *8 (D. Hawai`i Oct. 23, 2013).

> A federal court interpreting state law is bound by the decisions of a state's highest court. To the extent this case raises issues of first impression under Hawaii law, the Court, "sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide [the] issue." <u>Burlington [Ins. Co. v. Oceanic Design & Constr., Inc.]</u>, 383 F.3d [940,] 944 [(9th Cir. 2004)] (alterations in original) (internal quotations omitted).

<u>Allstate Ins. Co. v. Riihimaki</u>, Civ. No. 11-00529 ACK-BMK, 2012 WL 1983321, at *6 (D. Hawai`i May 30, 2012) (some alterations in <u>Riihimaki</u>) (some citations omitted).

This district court has summarized the framework for analyzing issues of insurance coverage under Hawai`i law as follows:

"Every insurance contract shall be construed
according to the entirety of its terms and
conditions as set forth in the policy, and as
amplified, extended, restricted, or modified by
any rider, endorsement or application attached to
and made a part of the policy." Haw. Rev. Stat.
§ 431:10-237. Thus, Hawaii law looks to the plain
language of the insurance policy to determine the
scope of an insurer's duties. <u>See, e.g.</u>, <u>Sentinel
Ins. Co. v. First Ins. Co. of Haw.</u>, 76 Hawai`i
277, 875 P.2d 894, 904 (1994); <u>see also</u> <u>Hawaiian
Ins. & Guar. Co. v. Fin. Sec. Ins. Co.</u>, 72 Haw.
80, 807 P.2d 1256, 1260 (1991) ("In the context of
insurance coverage disputes, we must look to the
language of the insurance policies themselves to
ascertain whether coverage exists, consistent with
the insurer and insured's intent and
expectations."); <u>Burlington Ins. Co. v. Oceanic
Design & Constr., Inc.</u>, 383 F.3d 940, 945 (9th
Cir. 2004) ("In Hawaii, the terms of an insurance
policy are to be interpreted according to their
plain, ordinary, and accepted sense in common
speech.").

Nevertheless, insurance policies must be
construed "in accordance with the reasonable
expectations of a layperson." <u>Hawaiian Isle
Adventures, Inc. v. N. Am. Capacity Ins. Co.</u>, 623
F. Supp. 2d 1189, 1194 (D. Haw. 2009) (citing
<u>Dawes v. First Ins. Co. of Haw.</u>, 77 Hawai`i 117,
883 P.2d 38, 42 (1994)). Insurance contracts are
"contracts of adhesion" and Hawaii law "ha[s] long
subscribed to the principle that [they] must be
construed liberally in favor of the insured and
any ambiguities must be resolved against the
insurer." <u>Guajardo v. AIG Haw. Ins. Co.</u>, 118
Hawai`i 196, 187 P.3d 580, 586 (2008) (citing
<u>Dairy Rd. Partners v. Island Ins. Co.</u>, 92 Hawai`i
398, 992 P.2d 93, 106-07 (2000) (internal
citations, quotation marks, brackets, and ellipses
omitted)); <u>see also</u> <u>Hart v. Ticor Title Ins. Co.</u>,
126 Hawai`i 448, 272 P.3d 1215, 1223 (2012).

<u>Cabalis</u>, 2015 WL 159157, at *3 (alterations in <u>Cabalis</u>).

Further, this Court has summarized the following

relevant principles regarding the duty to defend and the duty to

indemnify under Hawai`i law:

> The burden is on the insured to establish coverage under an insurance policy. <u>See</u> <u>Sentinel Ins. Co. v. First Ins. Co. of Haw.</u>, 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as amended on grant of reconsideration); <u>Crawley v. State Farm Mut. Auto. Ins. Co.</u>, 90 Haw. 478, 483, 979 P.2d 74, 79 (App. 1999). The insurer has the burden of establishing the applicability of an exclusion. <u>See</u> <u>Sentinel</u>, 76 Haw. at 297, 875 P.2d at 914.

> The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." <u>Dairy Road Partners v. Island Ins.</u>, 92 Haw. 398, 413, 922 P.2d 93, 108 (2000). The obligation to defend an insured is broader than the duty to indemnify. The duty to defend arises when there is any potential or possibility for coverage. <u>Sentinel</u>, 76 Haw. at 287, 875 P.2d at 904; <u>accord</u> <u>Haole v. State</u>, 111 Haw. 144, 151, 140 P.3d 377, 384 (2006) ("if there is no potential for indemnification, then no duty to defend will arise"). However, when the pleadings fail to allege any basis for recovery under an insurance policy, the insurer has no duty to defend. <u>Pancakes of Hawaii, Inc. v. Pomare Props. Corp.</u>, 85 Haw. 286, 291, 994 P.2d 83, 88 (Haw. Ct. App. 1997)). In other words, for [the insurer] to have no duty to defend, it must prove that it would be impossible for a claim in the underlying lawsuit to be covered by the policy. <u>See</u> <u>Tri-S Corp. v. W. World Ins. Co.</u>, 110 Haw. 473, 488, 135 P.3d 82, 97 (2006).

<u>Estate of Rogers [v. Am. Reliable Ins. Co.</u>, Civil No. 10-00482 SOM/RLP], 2011 WL 2693355, at *4 [(D. Hawai`i July 8, 2011)]. The Hawai`i Supreme Court has emphasized that the duty to defend applies even if the possibility of coverage is "remote". <u>Tri-S Corp. v. W. World Ins. Co.</u>, 110 Hawai`i 473,

> 488, 135 P.3d 82, 97 (2006). Further, "[a]ll
> doubts as to whether a duty to defend exists are
> resolved against the insurer and in favor of the
> insured." Id.

U.S. Fire Ins. Co. v. Estate of Campbell, Civil No. 11–00006
LEK–KSC, 2011 WL 6934566, at *5 (D. Hawai`i Dec. 30, 2011) (some
alterations in Campbell Estate).

## II.  **Insureds under the Policy**

Ace Insurance admits that the County is an additional
insured under the Policy.  [Mem. in Supp. of Counter-Motion at 4;
Ace Insurance's Separate Concise Statement of Facts in Supp. of
Counter-Motion ("Ace CSOF"), filed 1/22/15 (dkt. no. 37), Decl.
of Lenne N. Omuro ("Omuro Decl."), Exh. D (Policy) at D-041
(endorsement titled "Additional Insured - Designated Person or
Organization").]

Ace Insurance, however, asks this Court to rule that
Ramos and Polanco are not covered persons under the Policy.  The
Policy states, *inter alia*:

> SECTION II – WHO IS AN INSURED
>
> . . . .
>
> 2.   Each of the following is also an insured:
>
>      a.   Your "volunteer workers" only while
>           performing duties related to the conduct
>           of your business, or your "employees,"
>           . . . but only for acts within the scope
>           of their employment by you or while
>           performing duties related to the conduct
>           of your business. . . .

[Policy at D-026 (emphasis omitted).[3]]  Under Section V of the

Policy, which sets forth the Policy's definitions, the Fair

Alliance's employees include a "leased worker," but does not

include a "temporary worker."  [Id. at D-030, ¶ 5.]  Section V

defines those terms as follows:

> 10.  "Leased worker" means a person leased to you
>      by a labor leasing firm under an agreement
>      between you and the labor leasing firm, to
>      perform duties related to the conduct of your
>      business.  "Leased worker" does not include
>      "temporary worker".
>
> . . . .
>
> 19.  "Temporary worker" means a person who is
>      furnished to you to substitute for a
>      permanent "employee" on leave or to meet
>      seasonal or short-term workload conditions.

[Id. at D-031 to D-032.]

Ace Insurance argues that nothing in the Goodhue

Complaint alleges that Ramos and Polanco were acting as Fair

Alliance employees during the Incident.  See, e.g., Goodhue

Complaint at ¶¶ 19, 20.  It also argues that the discovery in

this case supports its position.  See Omuro Decl., Exh. E (the

Fair Alliance's Response to the County's First Request for

Production of Documents, dated 7/18/14) at Response No. 8

(stating that the Fair Alliance has no documents responsive to

---

[3] Pages D-018 through D-033 of the Policy make up the
section titled "Commercial General Liability Coverage Form."
This Court will refer to commercial general liability policies as
"CGL policies."

the request for records regarding any payment of workers'
compensation benefits to MPD officers who worked at the County
Fair); id., Exh. F (1099-MISC tax form for Ramos indicating that
the Fair Alliance paid him "Nonemployee compensation"); id., Exh.
G (Polanco's form indicating the same).  Further, Ace Insurance
argues that there is no evidence in the record that either the
County or MPD is a "labor leasing firm" or that there was an
agreement between the County or MPD and the Fair Alliance to
lease officers to perform duties related to the conduct of the
Fair Alliance's business.  Plaintiffs have provided
Mr. Chumbley's deposition testimony that he had MPD officers
working at the County Fair because it is a requirement, as part
of the permitting process for the fairgrounds, to have off-duty
officers provide traffic control at the event.  [Lutey Decl.,
Exh. 4 (Trans. Excerpts of Avery B. Chumbley Depo., taken on
8/14/14 in Goodhue) at 24-25.]

        The Policy does not contain a definition of a "labor
leasing firm," and the Hawai`i Supreme Court has not addressed
either the issue of whether a county police department, and/or
the county, that allows its officers to work as security
personnel at private events is a labor leasing firm for purposes
of a commercial insurance policy or what is the definition of a
labor leasing firm for purposes of a CGL policy.  Thus, this
Court must predict how the Hawai`i Supreme Court would decide

these issues.  See Burlington Ins., 383 F.3d at 944.  In
predicting how the highest state court would decide the issue, a
federal court may use intermediate appellate court decisions,
decisions from other jurisdictions, statutes, treatises, and
restatements as guidance.  Trishan Air, Inc. v. Fed. Ins. Co.,
635 F.3d 422, 427 (9th Cir. 2011).  Neither the Hawai`i
Intermediate Court of Appeals nor this district court has
addressed the issues presented by Ramos and Polanco's work at the
County Fair.  This Court therefore predicts that the Hawai`i
Supreme Court would look to decisions from other jurisdictions
for guidance.

       As support for its argument that Ramos and Polanco are
not insureds, Ace Insurance has pointed out that they apparently
were not covered under the Fair Alliance's workers' compensation
insurance.  See Omuro Decl., Exh. E at Response No. 8.  If Ramos
and Polanco were not covered by the Fair Alliance and remained
covered by MPD's workers' compensation insurance, that actually
supports Plaintiffs' position that Ramos and Polanco are the Fair
Alliance's "leased workers."  For example, a Massachusetts
appellate court reviewing a CGL policy has stated:

           "Injuries to employees are typically excluded from
           coverage . . . as the expectation is that the
           employer will have in place workers' compensation
           insurance (or self-insurance) . . . ."
           [Monticello Ins. Co. v. Dion, 65 Mass. App. Ct.
           46, 47, 836 N.E.2d 1112 (2005).]  "Unlike the
           **'leased worker,' for whose benefit workers'
           compensation insurance was reliably maintained by**

**the general employer (the labor-leasing agency)**,
it is possible that the 'temporary worker'
exception to the general exclusion of coverage for
employees may have been intended as gap coverage
to protect the special employer (i.e., the CGL
insured) where the furnishing employer may lack
coverage." Id. at 49-50, 836 N.E.2d 1112. . . .

Cent. Mut. Ins. Co. v. True Plastics, Inc., 992 N.E.2d 385, 389

(Mass. App. Ct. 2013) (emphasis added).

Another factor that courts consider in determining

whether someone is a "leased worker" is whether he can be

considered an independent contractor.  In construing the term

"leased worker" in a business automobile insurance policy, a

North Carolina appellate court stated:

> As an "independent contractor," Mr. Paul may
> not have been leased but, instead, may have been
> engaged solely in work for Pro-Tech and only
> subject to the control of Brinley's Grading
> regarding the result of the work.[4] See Coastal
> Plains Utils., Inc. v. New Hanover Cnty., 166 N.C.
> App. 333, 345, 601 S.E.2d 915, 923 (2004) ("An
> independent contractor . . . is one who exercises
> an independent employment and contracts to do
> certain work according to his own judgment and
> method, without being subject to his employer
> except as to the result of his work." (internal
> quotation marks omitted)).

Nationwide Prop. & Cas. Ins. Co. v. Brinley's Grading Serv.,

Inc., No. COA12-276, 2013 WL 432578, at *5 (N.C. Ct. App. Feb. 5,

2013) (some alterations in Nationwide).  Although the Goodhue

---

[4] The complaint alleged that, on the day of the incident at
issue in the case, "Mr. Paul was an employee of Pro-Tech
Management & Equipment Services, Inc. and was doing work for
Brinley's Grading pursuant to a contract between Pro-Tech and
Brinley's Grading." Nationwide, 2013 WL 432578, at *1.

Complaint does not expressly allege that MPD and/or the County is

a labor licensing firm, its allegations do suggest that Ramos and

Polanco were acting on behalf of both MPD and the Fair Alliance.

> 36.  . . . Mr. Chumbley said that Pastor and
> Mrs. Goodhue had two choices: leave or be
> arrested.  Mr. Chumbley was very clear that he
> planned to call the police, and have Pastor and
> Mrs. Goodhue arrested, if they did not leave.
>
> 37.  In response, Pastor Goodhue told
> Mr. Chumbley that they would not leave or cease
> distributing the pamphlets unless directed to do
> so by a police officer.
>
> 38.  Mr. Chumbley spoke to the police, and
> approximately 15-20 minutes later, Defendant Ramos
> approached and spoke to Pastor and Mrs. Goodhue.
>
> 39.  Defendant Ramos told Pastor and
> Mrs. Goodhue that the Maui Fair had a permit for
> the entire area - including the public sidewalks,
> the street, and the park area outside the fenced
> Maui Fair grounds.  Defendant Ramos also stated
> that he had assisted in drafting the permit at
> issue, and the Maui fair essentially "owned" the
> sidewalk because of the permit. . . .  Defendant
> Ramos stated that, due to the Maui Fair's
> complaint about [the Goodhues'] activities, Pastor
> and Mrs. Goodhue were ordered to leave
> immediately.
>
> 40.  There was no question that this was a
> direct order from a police officer to leave the
> area immediately, and Pastor and Mrs. Goodhue
> understood this order to mean that if they did not
> leave immediately, they would be physically
> removed from the premises and/or arrested.

[Goodhue Complaint at ¶¶ 36-40.]  The Goodhue Complaint also

alleges that "Ramos and Polanco were acting in accordance with

official Maui County policy and/or custom when they violated

Pastor and Mrs. Goodhue's First Amendment rights by ordering them

to stop distributing religious literature or risk arrest." [<u>Id.</u> at ¶ 48.]

This Court must view the record in the light most favorable to Ace Insurance in considering Plaintiffs' Motion and in the light most favorable to Plaintiffs for the Counter-Motion. <u>See, e.g.</u>, <u>Maui Elec. Co. v. Chromalloy Gas Turbine, LLC</u>, Civil No. 12-00486 SOM-BMK, 2015 WL 1442961, at *4 (D. Hawai`i Mar. 27, 2015) (stating that, in considering a motion for summary judgment, "[a]ll evidence and inferences must be construed in the light most favorable to the nonmoving party" (citing <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987))).

Ace Insurance has presented evidence that the Fair Alliance paid Ramos's and Polanco's wages for their work at the County Fair. <u>See</u> Omuro Decl., Exhs. F & G. This Court does not consider that dispositive, but merely one of several factors that it can consider in evaluating the leased worker issue and labor licensing firm issue. This Court also notes that Mr. Chumbley's testimony that it is a requirement in the permitting process to agree to hire off-duty police officers as security for an event indicates that MPD/the County routinely allows officers to perform work for private entities in the manner that Ramos and Polanco did for the Fair Alliance.

Even viewing the allegations of the Goodhue Complaint and the evidence presented in this case in the light most favorable to Ace Insurance, this Court FINDS that there is at least a remote possibility that Ramos and Polanco are insureds under the Policy because they were "leased workers" from MPD and/or the County when it was acting as a "labor leasing firm." See Tri-S Corp., 110 Hawai`i at 488, 135 P.3d at 97. This Court therefore DENIES the Counter-Motion to the extent that Ace Insurance seeks a ruling that Ramos and Polanco are not insureds under the Policy, and GRANTS the Motion as to that issue. See Fed. R. Civ. P. 56(a) (stating that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

## III. **Coverage A**

Coverage A of the Policy governs bodily injury and property damage liability. The pertinent part of Coverage A states:

> 1. Insuring Agreement
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of **"bodily injury"** or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or

> > > "property damage" to which this
> > > insurance does not apply. . . .
> > >
> > > . . . .
> >
> > b.   This insurance applies to "bodily injury
> >      or "property damage" only if:
> >
> > > (1)   **The "bodily injury"** or "property
> > >       damage" **is caused by an**
> > >       **"occurrence"** that takes place in
> > >       the "coverage territory"[.]

[Policy at D-018 (original emphases omitted, other emphases added).]   "'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."   [<u>Id.</u> at D-030, ¶ 3.]   Plaintiffs argue that, under Hawai`i law, the Goodhues' alleged mental and emotional distress falls within the definition of "bodily injury," and therefore there is a clear potential for indemnification under the Policy, which triggers the duty to defend.

## A.   <u>Occurrence</u>

Before addressing Plaintiff's argument regarding the Goodhue's claim for emotional distress, this Court must first address whether the alleged bodily injury was caused by an "occurrence."   The Policy defines an "occurrence" as "an **accident**, including continuous or repeated exposure to substantially the same general harmful conditions."   [<u>Id.</u> at D-031, ¶ 13 (emphasis added).]   The Hawai`i Supreme Court has

17

stated:

> The question of what is an "accident" must be
> determined by addressing the question from the
> viewpoint of the insured. This court has
> addressed this question previously in <u>AIG Hawaii
> Insurance Co., Inc. v. Caraang</u>:
>
>> "[I]f the insured did something or . . .
>> failed to do something, and the insured's
>> expected result of the act of omission was
>> the injury, then the injury was not caused by
>> an accident and therefore not . . . within
>> the coverage of the policy . . ." [<u>Hawaiian
>> Ins. & Guar. Co. v.] Blanco</u>, 72 Haw. [9] at
>> 16, 804 P.2d [876] at 880 [(1990)] (insured
>> fired rifle in victim's direction, intending
>> to frighten but instead injuring him; injury
>> held to be reasonably foreseeable and
>> therefore not accidental from insured's
>> viewpoint; consequently, insurer had no duty
>> to defend); <u>see also</u> [<u>Hawaiian Ins. & Guar.
>> Co. v.] Brooks</u>, 67 Haw. [285] at 292, 686
>> P.2d [23] at 27-28 [(1984)] (from perspective
>> of insured truck driver, sexual assault of
>> hitchhiker in rear section of vehicle by
>> insured's co-worker not accidental where
>> insured aware of attack but chose not to do
>> anything to prevent or mitigate harm to
>> victim, thereby facilitating commission of
>> act; insurer held to have no duty to defend
>> or indemnify).
>
> * * * * * *
>
> The teaching of <u>Blanco</u> and <u>Brooks</u>, however,
> is that, in order for the insurer to owe a
> duty to defend or indemnify, the injury
> cannot be the expected or reasonably
> foreseeable result of the insured's own
> intentional acts or omissions.

74 Haw. 620, 635-636, 851 P.2d 321, 329 (1993).

<u>Hawaiian Holiday Macadamia Nut Co., Inc. v. Indus. Indem. Co.</u>, 76

Hawai`i 166, 170, 872 P.2d 230, 234 (1994) (alterations in

Hawaiian Holiday).

        Plaintiffs argue that Ramos and Polanco made a good
faith mistake regarding the areas covered by the Fair Alliance's
permit.  Although the areas where the Goodhues were distributing
their religious pamphlets were outside the fairgrounds, Mr.
Chumbley represented to Ramos that they were covered by the Fair
Alliance's permit.  [Reply, Decl. of Moana M. Lutey ("Lutey Reply
Decl."), Exh. 7 (Trans. Excerpt of Darrell Ramos Depo., taken on
8/13/14 in Goodhue) at 26, Exh. 8 (Trans. Excerpts of Avery B.
Chumbley Depo., taken on 8/14/14 in Goodhue) at 23.]
Mr. Chumbley testified that it was his understanding that the
Fair Alliance's permit included all of the roadways and sidewalks
surrounding the fairgrounds.  He formed this understanding based
on the Fair Alliance's operation at the fairgrounds since 1989.
[Lutey Reply Decl., Exh. 8 at 23.]  As to one area, Mr. Chumbley
testified that the Goodhues' distribution of materials was
creating a safety hazard because it was causing people to step
off of the sidewalk and into the roadway.  He believed that the
area was within the Fair Alliance's control under the terms of
the permit, and that the Goodhues needed to leave.  He conveyed
this to the police officers.  [Lutey Decl., Exh. 6 (Trans.
Excerpts of Avery B. Chumbley Depo., taken on 8/14/14 in Goodhue)
at 48.]  According to the Goodhues, Ramos informed them that, due
to the Fair Alliance's complaint, they had to leave the area

19

immediately. [Goodhue Complaint at ¶ 39.] Ramos also instructed them that they could not distribute their pamphlets at a nearby street corner. He told them that an MPD officer was stationed there and the officer would instruct them to move if they attempted to distribute pamphlets there. The Goodhues went to that corner and saw another MPD officer, who they believe was Polanco. He confirmed that they could not distribute their pamphlets in those two areas because of the Fair Alliance's permit. [Id. at ¶¶ 42-46.] Plaintiffs argue that Ramos and Polanco's reliance on Mr. Chumbley's mistaken belief about the scope of the permit constitutes an "accident" for purposes of the Policy. As previously noted, for purposes of Ace Insurance's Counter-Motion, this Court views the record in the light most favorable to Plaintiffs. Thus, in analyzing the availability of coverage under Coverage A, this Court will accept Plaintiffs' evidence that Ramos and Polanco relied upon Mr. Chumbley's mistaken belief regarding the scope of the Fair Alliance's permit.

The Hawai`i Supreme Court has not squarely addressed the issue of whether a mistake of fact can constitute an accident under an occurrence policy. However, based on the supreme court's case law defining "occurrence" and its rulings in other cases, this Court predicts that the Hawai`i Supreme Court would hold that a mistake of fact, such as the one that Ramos and

Polanco made, does not constitute an accident/occurrence.  In
determining whether an incident is an "occurrence" or "accident,"
Hawai`i courts ask whether the insured did something and whether
the alleged injury was an expected result of the act.  Ramos and
Polanco intentionally instructed the Goodhues to stop
distributing their religious pamphlets, and it was their intent
to obtain the Goodhues' compliance.

        The Goodhues allege that were there to "'do good'" by
sharing their religious beliefs with people that passed by on
their way to the County Fair.  [Goodhue Complaint at ¶¶ 33, 41.]
The Goodhues state that, as a result of Ramos's actions, they
believed that they had to leave the public areas or be arrested,
and they characterize both Ramos's and Polanco's actions as
"threats."  [Id. at ¶¶ 41, 47.]  They allege that, "[a]s a direct
and proximate result of" Plaintiffs' actions, they "suffered
humiliation, embarrassment, inconvenience, [and] mental and
emotional distress."  [Id. at ¶ 62.]  Although Ramos testified
that the conversation he and Mr. Chumbley had with the Goodhues
was "very polite," [Lutey Reply Decl., Exh. 7 at 26,] it was
reasonably foreseeable that the Goodhues would experience various
forms of emotional distress as a result of Ramos's and Polanco's
actions.

        Thus, based on the Hawai`i Supreme Court's definition
of an "occurrence," this Court concludes that, even if they

21

relied in good faith on Mr. Chumbley's mistaken belief about the scope of the Fair Alliance's permit, Ramos's and Polanco's instructions to the Goodhues were not accidents and did not constitute occurrences under the Policy. Accord Hawaiian Holiday, 76 Hawai`i at 170-71, 872 P.2d at 234-35 (planting less trees than provided in the contract, planting the wrong type of trees and seedlings, and planting seedlings and grass at the wrong times were not accidents and did not constitute occurrences under the CGL policy); Blanco, 72 Haw. at 16, 804 P.2d at 880 (intentional firing of a rifle was not an accident), *overruled on other grounds by* Dairy Road Partners v. Island Ins. Co., 92 Hawai`i 398, 992 P.2d 93 (2000); see also State Farm Fire & Cas. Co. v. Miya, 2013 WL 3305437, at *8 (D. Hawai`i June 28, 2013) (concluding that there was no occurrence under a homeowner's policy where the insured "forcefully struck [the victim] several times in the face and head," even if he did not intend to harm the victim).[5]

## B. **Expected Injury Exclusion**

This Court also notes that the Policy contains an

---

[5] Plaintiffs have attempted to distinguish these and other similar cases on the ground that the insureds in those cases committed fraud or committed an intentional tort, while Ramos and Polanco acted in good faith based on Mr. Chumbley's mistaken beliefs. This Court rejects that distinction. Based on the Hawai`i case law cited *supra*, the critical inquiry is not whether the insured acted in bad faith or out of ill will, but whether the injury was an expected or foreseeable result of the insured's act.

exclusion stating that Coverage A does not apply to, *inter alia*:
"'Bodily injury' or 'property damage' expected or intended from
the standpoint of the insured." [Policy at D-019, ¶ 2.a.] For
the same reasons set forth, *supra* Section III.A, this Court finds
that the injuries alleged in the Goodhue Complaint were expected
from Ramos's and Polanco's standpoint. Thus, even assuming,
*arguendo*, that Ramos's and Polanco's actions constituted
occurrences under the Policy, the expected injury exclusion would
preclude coverage.

    **C.**    <u>**Summary**</u>

    Even viewing the record in the light most favorable to
Plaintiffs, this Court FINDS that, based on either the lack of an
"occurrence" or the expected injury exclusion, there is no
possibility for coverage under the Policy's Coverage A for
Ramos's and Polanco's actions. The Goodhues' claims against the
County are based on its liability for Ramos's and Polanco's
actions. <u>See, e.g.</u>, Goodhue Complaint at ¶ 48. Because coverage
is not available to Ramos and Polanco, there is no possibility
that Coverage A applies to the County.

    This Court therefore GRANTS Ace Insurance's Counter-
Motion and DENIES Plaintiffs' Motion as to the duty to defend
under Coverage A.

**IV.**  <u>**Coverage B - Personal and Advertising Injury Liability**</u>

    Plaintiffs also argue that there is at least a

possibility of coverage under Coverage B of the Policy, which

governs liability for "personal and advertising injury."  The

pertinent part of Coverage B states:

> 1.   Insuring Agreement
>
>> a.   We will pay those sums that the insured
>>      becomes legally obligated to pay as
>>      damages because of "personal and
>>      advertising injury" to which this
>>      insurance applies.  We will have the
>>      right and duty to defend the insured
>>      against any "suit" seeking those
>>      damages.  However, we will have no duty
>>      to defend the insured against any "suit"
>>      seeking damages for "personal and
>>      advertising injury" to which this
>>      insurance does not apply. . . .
>>
>> b.   This insurance applies to "personal and
>>      advertising injury" caused by an offense
>>      arising out of your business but only if
>>      the offense was committed in the
>>      "coverage territory" during the policy
>>      period.

[Policy at D-022 to D-023 (emphases omitted).]  Section V of the

Policy defines "personal and advertising injury" as

> injury, including consequential "bodily injury",
> arising out of one or more of the following
> offenses:
>
>> . . . .
>
>> c.   The wrongful eviction from, wrongful
>>      entry into, or invasion of the right of
>>      private occupancy of a room, dwelling or
>>      premises that a person occupies,
>>      committed by or on behalf of its owner,
>>      landlord or lessor[.]

[Id. at D-031, ¶ 14.]

24

A.  **Whether Paragraph 14.c. Applies**

Plaintiffs argue that paragraph 14.c. applies because the Goodhues allege that they were wrongfully removed from a sidewalk area where they were distributing religious literature. [Mem. in Supp. of Motion at 6 (citing Goodhue Complaint at ¶ 60).] Ace Insurance argues that paragraph 14.c. does not apply because "the Goodhues were not evicted from any room, dwelling or premises which they occupied or to which they had a private right of occupancy." [Mem. in Supp. of Counter-Motion at 21.]

This Court agrees that the Incident clearly did not occur in a room or a dwelling. This Court notes that Ace Insurance's interpretation of paragraph 14.c requires a "right of private occupancy" whether the offense for which coverage is sought was a wrongful eviction, a wrongful entry, or an invasion. This Court rejects that strained interpretation. Based upon the sentence structure of paragraph 14.c, the more rational interpretation is that "personal and advertising injury" includes injury arising out of: 1) a wrongful eviction; 2) a wrongful entry; or 3) an invasion of the right of private occupancy. Compare Policy at D-031, ¶ 14.c with WDC Venture v. Hartford Accident & Indem. Co., 938 F. Supp. 671, 676-77 (D. Hawai`i 1996). In WDC Venture, the policy at issue included a personal injury provision that provided coverage for "injury arising out of one or more of the following offenses committed during the

policy period: (1) false arrest, detention, imprisonment, or malicious prosecution; (2) wrongful entry or eviction **or other invasion of the right of private occupancy**." 938 F. Supp. at 676-77 (emphasis added) (citation and quotation marks omitted). This Court must liberally construe the Policy in favor of the insureds and, to the extent that paragraph 14.c can be considered ambiguous, this Court must resolve the ambiguity in the insureds' favor. See Guajardo v. AIG Haw. Ins. Co., 118 Hawai`i 196, 187 P.3d 580, 586 (2008). Because the Policy does not specify that "wrongful eviction" and "wrongful entry" are forms of "invasion of the right of private occupancy," this Court rejects Ace Insurance's interpretation of paragraph 14.c.

Thus, the issue before this Court is whether there is a possibility of coverage for the claims in the Underlying Action because the Goodhues allege they were wrongfully evicted from premises that they occupied, by or on behalf of Fair Alliance, which was leasing the property. Ace Insurance argues that the Incident did not involve an eviction. The cases that Ace Insurance relies upon, however, address wrongful eviction claims by residents or tenants. See, e.g., Baham Ass'n of Apartment Owners of Opua Hale Patio Homes, Civ. No. 13-00669 HG-BMK, 2014 WL 2761744, at *3 (D. Hawai`i June 18, 2014); Watson v. Brown, 67 Haw. 252, 258, 686 P.2d 12, 13 (1984); Trs. Under the Will & Estate of Bishop v. Vegas, No. CAAP-12-0000999, 2013 WL 5575119,

at *1 (Hawai`i Ct. App. Oct. 9, 2013).  Nothing in either the
Policy or Hawai`i case law requires that the term "eviction" in
paragraph 14.c be limited to that context.  Liberally construing
the Policy in favor of the reasonable expectations of the
insureds, this Court interprets the term "eviction" to include
being forced to leave a legitimately occupied public space.  <u>See,</u>
<u>e.g.</u>, <u>Gathright v. City of Portland</u>, 439 F.3d 573, 578 (9th Cir.
2006) ("First Amendment jurisprudence is clear that the way to
oppose offensive speech is by more speech, not censorship,
enforced silence or **eviction from legitimately occupied public**
**space.**" (emphasis added) (citation omitted)).  The Goodhues
allege that they were forced to leave public sidewalk areas where
they either were distributing or intended to distribute religious
pamphlets, by Ramos and Polanco, at the behest of Mr. Chumbley,
the Fair Alliance's president.  <u>See, e.g.</u>, Goodhue Complaint at
¶¶ 36-40, 42-47.

　　　　Even viewing the record in the light most favorable to
Ace Insurance, this Court finds that: 1) the Goodhue Complaint
alleges a wrongful eviction; 2) the sidewalk areas from which the
Goodhues were forced to leave constitute premises which they
occupied; and 3) the eviction was committed on behalf of the Fair
Alliance.  Further, the Goodhue Complaint alleges an "injury"
that arose out of the wrongful eviction.  <u>See</u> Goodhue Complaint

at ¶ 62.[6]  This Court FINDS that the Goodhue Complaint alleges a

personal injury, as defined within paragraph 14.c. of the

Policy.[7]

    **B.**    **Whether the Knowing Violation
             of Rights Exclusion Applies**

        Ace Insurance also argues that, even if paragraph 14.c

applies, no coverage is available to Plaintiffs because

Coverage B states, in pertinent part:

    2.    Exclusions

        This insurance does not apply to:

        a.    Knowing Violation Of Rights Of Another
              "Personal and advertising injury" caused
              by or at the direction of the insured
              with the knowledge that the act would
              violate the rights of another and would
              inflict "personal and advertising
              injury."

[Policy at D-023 (emphases omitted).]  Ace Insurance has the

burden of proving facts that support applying the exclusion.  <u>See</u>

---

    [6] This Court notes that, as to Coverage B, it does not need
to address Ace Insurance's argument that the Goodhues' alleged
"humiliation, embarrassment, inconvenience, [and] mental and
emotional distress," [Goodhue Complaint at ¶ 62,] constitute
"bodily injury" under the Policy, because "personal and
advertising injury" is not limited to bodily injury.  <u>See</u> Policy
at D-031, ¶ 14 ("'Personal and advertising injury' means injury,
**including consequential "bodily injury"**, arising out of one or
more of the following offenses . . . ." (emphasis added)).

    [7] This Court notes that Ace Insurance has not contested
that, if the Incident involved a covered offense, it arose out of
the Fair Alliance's business, was committed within the territory
covered by the Policy, and was committed during the coverage
period.  <u>See</u> Policy at D-023, ¶ 1.b.

C. Brewer & Co. v. Marine Indem. Ins. Co. of Am., No. SCWC-28958, 2015 WL 1388626, at *5 (Hawai`i Mar. 27, 2015) ("Whenever the insurer relies on an exclusionary clause of a policy as a defense to liability, it has the burden of proving facts which bring the case within the exclusion." (brackets, citation, and quotation marks omitted)).

As noted previously, Plaintiffs have submitted evidence that Mr. Chumbley had a good faith belief that the areas in question were within the boundaries of the Fair Alliance's permits, and he instructed the officers based on that belief. See Lutey Decl., Exh. 6 at 48; Lutey Reply Decl., Exh. 7 at 26, Exh. 8 at 23. Even construing the record in the light most favorable to Ace Insurance, this Court finds that there is at least a remote possibility that Ramos and Polanco did not knowingly violate the Goodhues' rights. See Tri-S Corp., 110 Hawai`i at 488, 135 P.3d at 97. This Court therefore CONCLUDES that Plaintiffs are entitled to judgment as a matter of law as to Ace Insurance's duty to defend Plaintiffs under Coverage B. Plaintiffs' Motion is GRANTED, and Ace Insurance's Counter-Motion is DENIED, as to the duty to defend under Coverage B.

## II. Duty to Indemnify

As previously noted, the duty to defend is broader than the duty to indemnify. Sentinel, 76 Hawai`i at 287, 875 P.2d at 904. Thus, because there is no duty to defend under Coverage A,

there can be no duty to indemnify.  This Court therefore GRANTS Ace Insurance's Counter-Motion and DENIES Plaintiffs' Motion as to the duty to indemnify under Coverage A.

As to Coverage B, although this Court has found that there is at least a remote possibility of coverage, as to the duty to indemnify, this Court finds there are genuine issues of material fact that preclude summary judgment.  These include, *inter alia*: 1) whether Ramos and Polanco are insureds under the Policy because they were "leased workers" from a "labor licensing firm" at the time of the Incident; 2) whether coverage is triggered because the Goodhues suffered an injury arising out of a wrongful eviction; and 3) if the Goodhues were wrongfully evicted, whether Ramos and Polanco did so knowing that they were violating the Goodhues' rights, thereby removing the Incident from coverage because of a Policy exclusion.  See Dairy Road, 92 Hawai`i at 413, 922 P.2d at 108 (stating that an insurer owes a duty to indemnify "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion").  This Court therefore DENIES both Plaintiffs' Motion and Ace Insurance's Counter-Motion as to the duty to indemnify under Coverage B.

Further, this Court hereby informs the parties that it is inclined to: 1) find that it cannot resolve the material issues of fact in this case until the resolution of the

Underlying Action; and 2) close this case administratively
pending the resolution of the Underlying Action.  Any party
objecting to these inclinations must file a statement, not to
exceed five pages, setting forth the reasons why this Court
should not administratively close this case pending the
resolution of the Underlying Action.  The statement must be filed
by **June 1, 2015**.

<u>**CONCLUSION**</u>

On the basis of the foregoing, Plaintiffs' Motion for
Summary Judgment, filed January 2, 2015, and Ace Insurance's
Counter-Motion for Summary Judgment, filed January 22, 2015, are
HEREBY GRANTED IN PART AND DENIED IN PART.  The Counter-Motion is
GRANTED and the Motion is DENIED, insofar as this Court CONCLUDES
that Ace Insurance does not owe Plaintiffs a duty to defend or a
duty to indemnify in <u>Goodhue v. County of Maui, et al.</u>, CV 14-
00006 ACK-KSC, based on Coverage A.  The Motion is GRANTED and
the Counter-Motion is DENIED, insofar as this Court CONCLUDES
that Ace Insurance owes Plaintiffs a duty to defend in <u>Goodhue</u>
based on Coverage B.  Both the Motion and the Counter-Motion are
DENIED insofar as this Court FINDS that there are genuine issues
of material fact which preclude summary judgment on the duty to
indemnify based on Coverage B.

Any party that objects to this Court's inclination to
close this case administratively pending the resolution of

Goodhue must file a statement, in compliance with the terms of this Order, by **June 1, 2015**.

　　　　　　IT IS SO ORDERED.

　　　　　　DATED AT HONOLULU, HAWAII, April 30, 2015.



　　　　　　　　　　　　　　　／s／ Leslie E. Kobayashi
　　　　　　　　　　　　　　　Leslie E. Kobayashi
　　　　　　　　　　　　　　　United States District Judge

**COUNTY OF MAUI, ET AL. VS. ACE AM. INS. CO., ET AL.; CIVIL 14-00236 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART DEFENDANT ACE AMERICAN INSURANCE COMPANY'S COUNTER-MOTION FOR SUMMARY JUDGMENT**